IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CANAL INSURANCE COMPANY,

                Plaintiff,

v.                                     CIVIL ACTION NO.  5:13-cv-24764

MICHAEL DUPONT and
TRACY L. FOLEY,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiff's Motion for Summary Judgment* (Document 13),[1]

the *Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment* (Document

14), and the *Defendant Tracy Foley's Memorandum in Opposition to Plaintiff Canal Insurance

Company's Motion for Summary Judgment and Memorandum in Support Thereto* (Document

17).[2] The Court has also reviewed the *Plaintiff's Supplement to its Motion for Summary

Judgment* (Document 26)[3] and *Defendant Tracy Foley's Supplemental Response to Plaintiff*

---

[1]      Canal attaches the following as an exhibit to its motion for summary judgment: (1) a two page copy of the Affidavit of Michael Dupont, dated December 18, 2013, and (2) a one page copy of the form signed by Michael Dupont, dated October 18, 2008 (together, Exhibit 1, Document 13-1).
[2]      Mr. Foley attaches the following as exhibits to its opposition: (1) a twelve page copy of the West Virginia Uniform Traffic Crash Report on the subject accident, dated July 9, 2013 (Exhibit 1, Document 17-1); (2) a three page copy of the Affidavit of Tracy Foley, dated November 11, 2013 (Exhibit 2, Document 17-2); (3) a four page copy of a letter from Charles W. Covert to counsel for Mr. Foley in response to a FOIA Request with various attachments, dated November 26, 2013 (Exhibit 3, Document 17-3); and (4) a twelve page copy of a docket entry in an unrelated case, dated December 19, 2007 (Exhibit 4, Document 17-4).
[3]      Canal attaches the following as an exhibit to its supplemental motion for summary judgment: (1) a twenty-nine page copy of the deposition of Michael Dupont, dated March 18, 2014 (Exhibit A, Document 26-1).

*Canal Insurance Company's Supplemental Motion for Summary Judgment* (Document 28).[4]   For

the reasons stated more fully herein, the Court finds that Plaintiff Canal Insurance Company's

motion for summary judgment should be granted.


## I.        FACTUAL AND PROCEDURAL HISTORY

This declaratory judgment action arises out of an automobile accident between Defendants

Michael Dupont (Mr. Dupont) and Tracy Foley (Mr. Foley).   The facts are largely undisputed.

Specifically, on May 22, 2013, Mr. Dupont was operating a 2004 GMC Safari minivan when he

crossed over the center line and struck a vehicle driven by Mr. Foley near White Oak, Raleigh

County, West Virginia.[5]   At the time, Mr. Dupont worked for Williams Transport as a driver

primarily transporting CSX Transportation employees to and from job sites.[6]

On the day of the accident, Mr. Dupont was using the van on his day off, allegedly without

permission from Williams Transport, which expressly prohibited its employees from using

company vehicles for personal use.   Mr. Dupont signed a form document on October 18, 2008,

wherein he expressly agreed "that [he is] never to use Williams Transport vehicles for personal use

of any kind."   (*See* Document 13-1 at 3.)   He also executed an affidavit following the accident

wherein he swore that "[o]n a date before May 22, 2013, I was specifically instructed by

supervisors and superiors of my then-employer, [Williams Transport] that I was never to use

Williams Transport vehicles for personal use of any kind," and further swore that he had

---

4        Mr. Foley attaches the following as an exhibit to its supplemental response: (1) a copy of various photographs showing the aftereffects of an accident, undated (Exhibit 1, Document 28-1).
5        Mr. Foley suffered "broken ribs, broken teeth, [a] punctured lung, and a fractured shoulder and rotator cuff tear on the left shoulder" as a result on the accident.   (*See* Document 17 at 2.)   His injuries required hospitalization.
6        Williams Holdings LLC, d/b/a Williams Transport, owned and insured the GMC Safari involved in the accident.

previously "signed a written statement acknowledging the instruction and direction that I was never to use Williams Transport vehicles for personal use of any kind." (Document 13-1 at 1.) He then stated that on the date of the accident he was using the Williams Transport vehicle "without the knowledge or permission of" his employer to travel from his home to the home of a friend. (*Id.* at 1-2.) Finally, he maintains that at the time of the accident, he "was not acting within the scope of his employment . . . and . . . was not furthering the business of Williams Transport." (*Id.* at 2.)

Canal Insurance Company (Canal) issued a commercial automobile policy, PIP00123002, to Williams Transport with a coverage period of January 30, 2013, through January 30, 2014. The relevant policy language indicated that Canal "will pay all sums an 'insured' must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (*Compl.*, Document 1 at 3.) The Policy also defines insured as: "(a) you for any covered 'auto;' (b) anyone else while using with your permission a covered 'auto' you own, hire, or borrow . . .;" or "(c) anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." (*Id.*)

Canal Insurance states that Defendant Foley "has asserted a claim against the Policy for his injuries and damages resulting from the subject accident." (Document 1 at 3.) As a result, on October 10, 2013, it filed a *Complaint* (Document 1) for declaratory judgment, requesting that "the Court find that Plaintiff Canal has no duty to defend or indemnify Defendant Dupont under the

Policy as to the subject accident," and "that Plaintiff has no duty or liability to Defendant Foley under the Policy as to the subject accident."[7]   (Document 1 at 4.)

On January 23, 2014, Canal filed its *Motion for Summary Judgment* and accompanying *Memorandum in Support.*   The Defendant, Tracy Foley, filed his *Memorandum in Opposition* on February 6, 2014.[8]   Discovery between the parties continued, and as a result, Canal filed a *Supplement to its Motion for Summary Judgment* on June 5, 2014, and Mr. Foley filed his *Supplemental Response* on June 19, 2014.

## II.     STANDARD OF REVIEW

### A.  Summary Judgment

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning

---

7     Canal attached the following as exhibits to its complaint: (1) a seventy-five page copy of Policy PIP00123002, with coverage from 1/30/2013 to /30/2014, dated February 1, 2013 (Exhibit A, Document 1-1); (2) a one page copy of a form signed by Michael Dupont, dated October 18, 2008 (Exhibit B, Document 1-2); and (3) a one page copy of the civil cover sheet, dated October 4, 2013 (Exhibit C, Document 1-3).
8     The Court struck the Plaintiff's *Reply* (Document 18) as it did not comply with Rule 7 of the Local Rules of Civil Procedure.   (*See* Document 21.)

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element … necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

### B. *Determination of Insurance Policy Coverage*

The Supreme Court of Appeals of West Virginia has instructed that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Tennant v. Smallwood,* 211 W.Va. 703, 706, 568 S.E.2d 10 (2002) (citation and quotation omitted). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the

plain meaning intended."   *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 815–16, 172 S.E.2d 714 (1970) (citations omitted).

On the other hand, if a policy's provisions are ambiguous, they will be liberally construed in favor of the insured.   *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d 156 (1986) (citations omitted) ("since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured.")   However, "such construction should not be unreasonably applied to contravene the object and plain intent of the parties."   Syl. Pt. 6, *Hamric v. Doe*, 499 S.E.2d 619 (1997) (quoting Syl. Pt. 2, *Marson Coal Co. v. Ins. Co. of State of Pennsylvania*, 210 S.E.2d 747 (1974)).   A policy provision is ambiguous if it is "reasonably susceptible of two different meanings or . . . of *such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning*."   *Glen Falls Inc. Co. v. Smith*, 617 S.E.2d 760, 768 (2005) (quoting Syl. Pt. 5, *Hamric*, 499 S.E.2d 619 (emphasis in original)).

If coverage is not intended to apply, the policy should clearly indicate that insurance is not available.   "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured."   *Satterfield v. Erie Ins. Property and Cas.,* 479, 618 S.E.2d 483, 487 (quoting Syl pt. 10, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.,* 356 S.E.2d 488 (1987), overruled on other grounds by *Potesta v. U.S. Fidelity & Guard. Co.*, 504 S.E.2d 135 (1998)).

## III.   DISCUSSION

Canal notes that West Virginia Code § 33-6-31 requires that an insurance policy include coverage for anyone "responsible for the use of or using the motor vehicle with the consent, express or implied, of his or her employer."   (Document 14 at 3) (emphasis omitted.)   Canal then argues that "[t]here is no material issue as to Williams Transport's instructions to [Mr.] Dupont that he was not authorized or permitted to use the vehicle after hours and for his personal use," and thus, it is entitled to summary judgment because West Virginia law is "clear that when an operator of a motor vehicle does not have the permission of the owner or custodian to use a vehicle and the liability insurance policy requires such permission, the liability insurer may disclaim coverage for that operator arising out of the non-permissive use."   (*Id.* at 4.)   For support, it cites *Metropolitan Prop & Liability Ins. Co. v. Acord*, 465 S.E.2d 901 (W. Va. 1995).

Mr. Foley first responds that he "… has not had the benefit of discovery to determine the circumstances surrounding the nature of the use granted to Mr. Dupont to operate the company van which is vital for this Court's interpretation of 'permissive use' under the Canal Policy, since that term is undefined and ambiguous."   (Document 17 at 3-4.)   He argues that, regardless, all inferences must be made in his favor and in favor of coverage.   (*Id.* at 7.)   He also argues for coverage based on the theory of implied use under West Virginia law because "Mr. Dupont regularly kept the vehicle at his home in Hinton, West Virginia and routinely used the vehicle for his personal use . . .".   (*Id.*)   He then provides an affidavit wherein he states that Mr. Dupont made several statements to him following the accident, including that he had previously been fired from Williams Transport when driving the vehicle for personal trips but was rehired three months later, that most employees that work for Williams take the vehicles home and on other personal

trips, that he got his job because one of his relatives worked on the railroad, and that he had been hospitalized following the accident due to his nervousness.  (*Id.* at 7-8.)   Mr. Foley indicated that he had previously personally seen the maroon GMC Safari van parked outside of Mr. Dupont's apartment.  (*Id.* at 8.)   He avers that discovery will show that "Williams Transport provided implied permission for [Mr.] Dupont to use the vehicle by negligently failing to ensure company vehicles were parked at the designated company sites, if the drivers were not allowed to be driving them home or using them for personal trips."  (*Id.*)

He argues that the insurance policy is ambiguous and that the exclusions must be strictly construed against the insurer.  (*Id.* at 8-9.)   He also argues that West Virginia Code § 24A-2-1 dictates that "the policy language should be construed to afford the mandatory insurance required by common carriers . . .".  (*Id.*)   Mr. Foley claims that Canal conveniently failed to cite the long list of cases interpreting West Virginia law to provide coverage under implied consent in order to protect the public from restrictive exclusions in an insurance policy (*Id.* at 9-10.) and distinguishes *Metropolitan* because Mr. Dupont "did not take the vehicle without the Insured owner's permission, but rather, was in possession of the keys and had the vehicle at his home."  (*Id.* at 11.)

Mr. Foley cites *Universal Underwriters Ins. v. Taylor*, 408 S.E.2d 358 (W. Va. 1991) for support that Mr. Dupont was driving with the implied consent of Williams Transport because of the initial permission granted to him.  (Id. at 14-16.)   He also advances West Virginia's use of "reasonable expectations" to argue that coverage should be triggered in this instance, and cites *Potesta v. United States*, 504 S.E.2d 135 (W. Va. 1988) and *NH Ins. v. RRK*, 736 S.E.2d 52 (W. Va. 2012) for support.  (*Id.* at 16-17.)   Mr. Foley asks the Court to define the term " insured" only under subsection (a) and not subsection (b) of the policy definition because subsection (a) does not

limit, condition or restrict coverage and further is not dependent "upon the purported use of the vehicle." (*Id.* at 18.)  Lastly, he argues that a federally mandated "Endorsement for Motor Vehicle Carrier Policies of Insurance for Public Liability under Section 29 (sic) and 30 of the Motor Carrier Act of 1980," or endorsement MCS-90, mandates coverage, "even if the vehicle is not covered under the insurance policy." (*Id.* at 19-20.)

After discovery, Canal filed its supplemental motion for summary judgment, arguing that "Mr. Dupont testified under oath[,] clearly stating at least seventeen (17) different times that he had no permission to use his employer's vehicle for personal purposes at that or at any other time." (Document 26 at 3-4.)  Canal argues that Mr. Dupont's testimony reveals "that he was instructed to not, at any time, drive the van on personal errands, which he admits he was doing at the time of the accident (refuting any possible claim by Defendant Foley that [Mr. Dupont] had been given any implied permission)." (*Id.* at 5.)  It succinctly claims that, "[b]ecause Mr. Dupont lacked express or implied permission to use the vehicle for any purpose at the time of the accident, his use could not have been a continuation of an earlier use as asserted by Defendant Foley." (*Id.* at 5.)

Mr. Foley responds that "the fact that Mr. Dupont was not given express permission to operate the van on the date of the collision does [not] alleviate the burden placed upon Williams Transport . . . to provide mandatory minimum insurance coverage in an amount greater than those contained in the requirements for personal automobile coverage," pursuant to "W.Va. Code § 24A-5-5 and CSR § 150-9-2." (Document 28 at 2.)  Although he challenges the competency of Mr. Dupont's deposition testimony, he employs testimony from that same deposition to declare that "the overall testimony clearly indicates a pattern of acquiescence by Williams Transport in allowing Mr. Dupont to use the vehicle as indicated by his habit of keeping the vehicle parked at

his home for nearly twenty-four hours after his last [pick-up]," and by "requiring . . . drivers to take care of the routine maintenance on their assigned vans; and by giving [Mr.] Dupont and other drivers possession of the keys at all times including the date this collision occurred."  (*Id.* at 3.) Mr. Foley alleges implied consent for personal use of the van because Williams Transport re-hired Mr. Dupont after the incident two years earlier when he drove the van for personal errands, and further, did not enforce its own policy of having the drivers park the vans at the yard on their days off.  (*Id.* at 4-5.)   Mr. Foley reiterates the argument that the doctrine of reasonable expectations applies to the facts at bar and should afford coverage under the policy because Mr. Foley had a reasonable expectation that Mr. Dupont had permission to operate the car.  (*Id.* at 5.)   He argues that coverage applies if the Court only reads subsection (a), and not (b), of the policy definition of "insured" and further, that the "MCS-90 Endorsement" otherwise affords coverage.  (*Id.* at 6.)

## IV.    DISCUSSION

As an initial matter, the Court notes that it enjoys original jurisdiction under 28 U.S.C. § 1332.[9]  Plaintiff Canal "is a foreign insurance company organized and incorporated under the laws of the State of South Carolina . . . [with its principal place of business] in Greenville, South Carolina."  (Document 1 at 1.)   Defendants Foley and Dupont are West Virginia citizens, with addresses of 318 Cedar Avenue, Hinton, West Virginia, 25951, and HC 85 Box 96A, Jumping Branch, West Virginia, 25969, respectively.  (*Id.*)   Further, given the alleged injuries, there is no dispute that the amount in controversy exceeds seventy-five thousand dollars ($75,000.00),

---

[9]       The Court notes that it also enjoys jurisdiction pursuant to 28 U.S.C. § 1331, as this matter deals with a federal question, whether to apply (and how to interpret) the MCS-90 Endorsement.   "The operation and effect of the MCS-90 endorsement is a matter of federal law."   *Canal Ins. Co. v. Distribution Services, Inc.*, 320 F.3d 488, 492 (4th Cir. 2003).

10

exclusive of costs and interest.   Thus, the parties are in complete diversity as to citizenship, and the matter in controversy exceeds $75,000.

The Court observes that it is undisputed that Mr. Dupont did not have the express permission of Williams Transport to drive the vehicle on May 22, 2013, his day off and the date of the accident.   It is undisputed that he had signed a form in late 2008 that made it clear that he was "<u>never</u> to use Williams Transport vehicles for personal use of any kind."   (*See* Document 13-1 at 3) (emphasis in original.)   It is also undisputed that he tendered an affidavit following service of the instant complaint, wherein he, again, unequivocally stated that "I was specifically instructed by my supervisors and superiors of . . . Williams Transport that I was never to use Williams Transport vehicles for personal use of any kind."   (*Id.* at 1.)   He further attested that he knew from at least 2008 that he was not to drive any Williams Transport vehicles for personal errands, and further declared that "[o]n May 22, 2013, without the knowledge or permission of Williams Transport, I used a 2004 GMC Safari Van . . . for my personal use, traveling from my home to a friend's home, an activity completely unrelated to my employment by Williams Transport."   (*Id.* at 1-2.)   He acknowledged that he drove "in knowing violation of the instructions given and agreed to by me not to use the vehicle for my personal use."   (*Id.* at 2.)   Finally, he stated that he "had no reason to believe I had the permission of Williams Transport . . . to use the vehicle for any purpose whatsoever[,] including for my personal use" because it was his day off.   (*Id.*)   Thus, there is no genuine dispute as to whether Mr. Dupont had express permission to operate the van on May 23, 2013.

The Court must now determine whether there was implied consent for Mr. Dupont to use the Williams Transport van on the day of the accident.   Employing case law cited by the

Defendant, "implied, as defined in [Webster's], means 'inferential or tacitly conceded.'   It involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action."   (Document 28 at 3) (citing *Allstate Insurance v. Merchants Hardware*, 179 F.Supp. 590, 595 (N.D. W.Va. 1959)). The uncontroverted deposition testimony of Mr. Dupont establishes that he did not have implied permission to use the van for any personal errand.   Quoting that same case, "the trouble here is that [Mr. Dupont] understood that special permission was necessary to [use the truck for any personal errand].   There was no mutual acquiescence to the contrary…"   *Id.*   If anything, here there was a mutual agreement that Mr. Dupont was never to use a Williams Transport vehicle for personal use of any kind.   Further, Mr. Dupont was terminated (or suspended) in the past when he used the vehicle for a personal errand, and he undoubtedly understood at that time, and afterwards, that taking the vehicle for personal errands was not permitted and could constitute grounds for termination.

Drawing all inferences in favor of Mr. Foley and viewing the evidence in the light most favorable to him, there simply is no evidence or inference which creates a genuine issue of material fact that Canal acquiesced in Mr. Dupont's personal use of his employment vehicle.   Importantly, there was not one example cited to signify that Williams Transport allowed or approved of Mr. Dupont using the van for a personal reason.   While the testimony clearly indicated that Williams Transport acquiesced in Mr. Dupont taking the GMC van home after shifts, this does not satisfy Mr. Foley's burden on summary judgment as the non-moving party to show more than "[m]ere speculation" or a "scintilla of evidence" to create a genuine issue regarding implied consent.

*Anderson*, 477 U.S. at 252.   Further adding to the Court's finding, the evidence also established that Mr. Dupont was terminated or suspended when he last took the vehicle for a personal reason without permission.   While it is true that he possessed keys to the van, there is no genuine issue of material fact that Mr. Dupont ever had any permission, express or implied, to use the van for personal reasons.[10]

Arriving at this conclusion, the Court rejects any argument on behalf of Defendant Foley that it should read subsection (a) of the Policy but not subsection (b), relative to the definition of "insured," when determining whether coverage applies because subsection (b) is ambiguous and subsection (a) is not.   "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."   *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 815–16, 172 S.E.2d 714 (1970) (citations omitted).   The applicable insurance policy states that "[t]he following are 'insureds,'" and then declares under subsection (a): "You for any covered 'auto.'" (Document 1-1 at 25, 40.)   Subsection (b) clearly demonstrates that "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow except . . ." is also an "insured." (*Id.*)

The plainly worded language preceding subsections (a) and (b) indicates that those persons or entities listed in subsections (a), (b), and (c) could be insureds.   Such language clearly indicates

---

10      The Court observes that Mr. Foley's arguments pursuant to W.Va. Code §§ 24A-5-5(g), 17D-4-12(b), and 33-6-31(a) fail for the same reasons.   Both W. Va. Code §§ 17D-4-12(b) and 33-6-31(a) couch their applicability on important qualifying language.   Specifically, W.Va. Code § 17D-4-12(b) requires that use of the vehicle was with the "express of implied permission of such named insured . . .".   W.Va. Code § 17D-4-12(b)(2).   Further, § 33-6-31(a) stipulates that the use of the vehicle must be "with the consent, express or implied, of the named insured or his or her spouse . . .".   W.Va. Code § 33-6-31(a).   Here, as mentioned, *supra*, Mr. Dupont did not have the express or implied consent or permission of Williams Transport to operate the van that day or for any personal reason.   The Court further notes that the requirements of W. Va. Code 24A-5-5(g) are apparently satisfied because Williams Transport has in place an insurance policy that would, if triggered, provide "at least seven hundred fifty thousand dollars."   W. Va. Code 24A-5-5(g).

that there are multiple classes of insureds, beyond "you" (the policy-holder).   (*See* Document 1-1 at 1.)   W. Va. Code § 33-6-30 further supports the Court's rejection of interpreting the policy language piecemeal.   "Every insurance contract <u>shall be construed according to the entirety of its terms and conditions as set forth in the policy</u> and amplified, extended or modified by any rider, endorsement or application attached to . . ."   W. Va. Code § 33-6-30(a) (emphasis added.)   All of the above counsels this Court to reject Mr. Foley's argument.

The Court also rejects Mr. Foley's assertion that the MCS-90 Endorsement included in the relevant insurance policy serves to otherwise provide coverage when the respective policy disavows it.   The Fourth Circuit Court of Appeals has noted that "[i]t is well-established that the primary purpose of the MCS-90 [endorsement] is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers."   *Distribution Services, Inc.*, 320 F.3d at 490."   Further, the Northern District of West Virginia noted that,

> [r]ecently, district courts in the Fourth Circuit have applied the regulations to conclude that the language of the statute and regulations requires payment for a judgment against the named insured only.   *Forkwar v. Progressive N. Ins. Co., Inc.,* 2012 WL 6562768, *8–12, —— F.Supp.2d —— (D.Md. Dec. 14, 2012) (holding the regulation's unambiguous language defining "insured" triggers the MCS-90 only when there is a judgment against the named insured); *Sentry Select Ins. Co. v. Thompson,* 665 F.Supp.2d 561, 569 (E.D.Va.2009) (holding that "in light of the unambiguous regulations defining 'insured,' and its broader statutory and regulatory context, the MCS–90 requires payment for a judgment against the named insured only.").

*Lancer Ins. Co. v. VIP Limousine Service, Ltd.*, 2013 WL 937735 *11 (N.D. W.Va. 2013) (unreported).

Additionally, the language used in the MCS-90 Endorsement clearly states that Canal "agrees to pay, within the limits of liability described herein, <u>any final judgment recovered against</u>

[Williams Transport] for public liability . . .".   (Document 1-1 at 65) (emphasis added.)   Since

Williams Transport is not a party to the instant matter, and because there has not been a judgment

entered against it, the MCS-90 Endorsement is not presently available.


## CONCLUSION

Wherefore, after careful consideration, based on the findings herein, the Court **ORDERS**

that the *Plaintiff's Motion for Summary Judgment* (Document 13) be **GRANTED**.   The Court

further **ORDERS** that any outstanding motions be **TERMINATED AS MOOT** and **ORDERS**

the Clerk of the Court to remove this matter from the docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any

unrepresented party.

ENTER:        September 11, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA